UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORION WINE IMPORTS, LLC and PETER E. CREIGHTON,<br><br>Plaintiffs,<br><br>v.<br><br>JACOB APPLESMITH, in his official capacity as Director of the California Department of Alcoholic Beverage Control,<br><br>Defendant. | No. 2:18-cv-01721-KJM-DB<br><br>ORDER |

Plaintiffs Orion Wine Imports, LLC ("Orion") and Peter E. Creighton bring this action under 42 U.S.C. § 1983 challenging the constitutionality of California Business & Professions Code section 23661 ("section 23661") and related California statutes, which permit alcoholic beverages to be imported into California only when consigned and delivered to a licensed importer at the importer's licensed premises or at a licensed public warehouse. Second Am. Compl. ("SAC"), ECF No. 32. Defendant Jacob Applesmith moves to dismiss plaintiffs' Second Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Mot., ECF No. 33-1. Plaintiffs filed an opposition, ECF No. 35, and defendant a reply, ECF No. 42. The court held a hearing on the motion to dismiss, at which James Tanford appeared for plaintiffs, Lykisha Beasley appeared for defendant, and Brian Rocca and Robert Brundage

appeared for amici California Beer and Beverage Distributors ("CBBD") and Wine and Spirits Wholesalers of California ("WSWC"). As explained below, the court GRANTS defendant's motion to dismiss and grants plaintiffs leave to amend.

I. BACKGROUND

   A. Plaintiffs' Claims

Plaintiff Orion is a Florida-based and -licensed importer and wholesaler of wine that would like to import, sell and deliver its products directly to California retailers. SAC ¶¶ 4, 17–20. Plaintiff Peter Creighton is a Florida resident and a Florida-licensed wine importer and wholesaler, as well as the owner and operator of Orion. *Id.* ¶¶ 5, 23. Creighton seeks to practice his profession and market, sell and deliver wine directly to California retailers. *Id.* ¶ 27. Defendant Jacob Applesmith is sued in his official capacity as the Director of the California Department of Alcoholic Beverage Control. *Id.* ¶ 6.

Plaintiffs seek a declaratory judgment that section 23661 discriminates against interstate commerce in violation of the Commerce Clause and the Privileges and Immunities Clause of Article IV of the U.S. Constitution. *Id.* at 7. Plaintiffs also seek to enjoin California from enforcing section 23661 and to require the State to permit out-of-state wine importers and wholesalers to obtain licenses under the same or similar licensure terms as in-state importers and wholesalers, as well as to import, sell and deliver wine directly to California retailers. *Id.* at 7–8. Section 23661 is a provision of California's Alcoholic Beverage Control Act ("ABC Act") regulating where imported alcoholic beverages are to be consigned and delivered upon arrival in California. Specifically, the statute provides in pertinent part that:

> [A]lcoholic beverages may be brought into this state from without this state for delivery or use within the state only by common carriers and only when the alcoholic beverages are consigned to a licensed importer, and only when consigned to the premises of the licensed importer or to a licensed importer or customs broker at the premises of a public warehouse licensed under this division.

Cal. Bus. & Prof. Code § 23661.

///

///

2

B. California's Three-Tiered Distribution and Licensing Scheme

As a provision of the ABC Act, section 23661 is part of California's three-tiered licensing scheme for the sale and distribution of alcoholic beverages. The three tiers refer to: (1) manufacturers of alcoholic beverages, (2) wholesalers and (3) retailers. *Id.* § 23320(a). Under the three-tier system, a manufacturer generally sells its wine to a licensed wholesaler, who then sells and delivers the wine to a licensed in-state retailer. *Id.* §§ 23356(b), 23378. The retailer, in turn, sells the wine to consumers. *Id.* §§ 23026, 23394, 23402. Importers typically fit into this system at the manufacturer and wholesaler tiers. *Id.* § 23017. The holder of an importer's license cannot sell or deliver wine to retailers unless it also has a wholesaler's license. *Id.* §§ 23374, 23374.5, 23374.6, 23775. If an importer also holds a wholesaler's license, then the importer can transfer the imported beverages to itself under the wholesaler's license and use the wholesaler's license to sell to retailers. *Id.* §§ 23374, 23378, 23402.

Section 23661, the statute at issue here, requires imported alcoholic beverages to be consigned only to licensed importers and delivered to licensed importers either at their licensed premises or at a licensed public warehouse. *Id.* § 23661. The statute thus regulates where in the three-tier structure alcoholic beverages are to be consigned and delivered upon arrival in California, funneling imported alcoholic beverages into California's three-tier system at the manufacturer or wholesaler levels. The statute also regulates where imported alcoholic beverages may be physically delivered: to a licensed importer either at its licensed premises or at a licensed public warehouse. A public warehouse is "any place licensed for the storage of, but not for sale of, alcohol, or alcoholic beverages, for the account of other licensees." *Id.* §§ 23036, 23375 ("A public warehouse license authorizes the storage of alcoholic beverages for the account of another licensee . . . ."). California law allows an "out-of-state business" to obtain a license to have alcoholic beverages come "to rest, [be] stored, and [be] shipped from" a licensed public warehouse. *Id.* § 24041.

Plaintiffs allege California's three-tiered scheme discriminates against out-of-state wholesalers and importers of wine. SAC at 2. They allege a business located within California can obtain a combination of licenses allowing it to import, sell and deliver wine directly to

3

California retailers, while a business located outside California cannot obtain the same combination of licenses and must instead sell its wine to in-state importers or wholesalers, who may then deliver the wine to California retailers. *Id.* ¶¶ 7–10.

C. <u>Procedural Background</u>

Plaintiffs filed their original complaint on June 14, 2018. ECF No. 1. On July 10, 2018, before defendant filed an answer, plaintiffs filed a First Amended Complaint. ECF No. 10. Defendant then moved to dismiss. ECF No. 15-1. On August 10, 2018, while defendant's motion to dismiss was pending, plaintiffs filed a motion seeking leave to file a second amended complaint. ECF No. 17-1. The court granted plaintiffs' motion to amend and denied defendant's motion to dismiss as moot. ECF No. 31. Plaintiffs filed their Second Amended Complaint on October 3, 2018, ECF No. 32, and defendant refiled his motion to dismiss on October 17, 2018, ECF No. 33-1. Plaintiffs filed their opposition to the motion to dismiss on November 7, 2018, ECF No. 35, and a response to CBBD and WSWC's amicus brief on January 29, 2019, ECF No. 40. Defendant filed his reply on February 1, 2019. ECF No. 42. Following the hearing on the motion, plaintiffs filed a supplemental memorandum, ECF No. 44, to which defendant filed objections, ECF No. 45. Plaintiffs then opposed the objections, ECF No. 46, and the court permitted defendant to respond, ECF Nos. 47 (Minute Order), 48 (Response).

On June 27, 2019, plaintiffs filed a Notice of Relevant Decision by the Supreme Court in *Tennessee Wine & Spirits Retailers Association v. Thomas*, 139 S. Ct. 2449 (2019). ECF No. 49. Defendant filed a Statement of Non-Opposition to plaintiffs' Notice of Relevant Decision. ECF No. 51. While the court has reviewed the new Supreme Court decision, that decision does not affect the court's decision here. Moreover, the court does not rely on plaintiffs' arguments in connection with their Notice, and so need not allow defendant the opportunity for a response. Assuming plaintiffs amend their complaint as provided by this order, the *Tennessee Wine & Spirits Retailers Association* decision may of course inform future motion practice before the court.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

The U.S. Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *see also Lujan*, 504 U.S. at 560 ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.").

A plaintiff possesses Article III standing only if he or she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547 (citing *Lujan*, 504 U.S. at 560). To establish an injury in fact, the plaintiff must show the defendant infringed on the plaintiff's legally protected interest in a "concrete and particularized" manner that is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations and citations omitted). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548 (citing Black's Law Dictionary 479 (9th ed. 2009)).

Lack of standing is "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6)." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *Id.* "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* A "district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)). In a factual attack, however, the court may review evidence outside the pleadings to

resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).

Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing the elements to satisfy Article III standing. *See Spokeo*, 136 S. Ct. at 1547. "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (alteration in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

B.  Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990), *overruled on other grounds*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay

between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept its factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (citing *Twombly*, 550 U.S. at 555–56). This rule does not apply to "a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)), "allegations that contradict matters properly subject to judicial notice," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001), or material attached to or incorporated by reference into the complaint, *see id.* A court's consideration of documents attached to a complaint, documents incorporated by reference in the complaint, or matters of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *cf. Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

III. DISCUSSION

Plaintiffs' Second Amended Complaint alleges section 23661 and related state statutory provisions violate the Commerce Clause and the Privileges and Immunities Clause of Article IV of the U.S. Constitution. SAC ¶¶ 7–32. Defendant moves to dismiss the Second Amended Complaint, asserting plaintiffs have failed to state either claim under Rule 12(b)(6) and lack standing to bring their Privilege and Immunities claim under Rule 12(b)(1). Mot. at 1–2.

A. Commerce Clause Claim

Plaintiffs allege California's three-tier regulatory scheme discriminates against interstate commerce in violation of the Commerce Clause. *See* SAC ¶¶ 7–16. Defendant moves to dismiss plaintiffs' Commerce Clause claim under Rule 12(b)(6), arguing plaintiffs have not alleged facts establishing unconstitutional discrimination. Mot. at 3.

The Commerce Clause both expressly grants Congress the power to regulate commerce among the several states, *see* U.S. Const. art. I, § 8, cl. 3, and implicitly limits the states' power to discriminate against interstate commerce. *See, e.g.*, *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273 (1988). The Commerce Clause "encompasses an implicit or 'dormant' limitation on the authority of the States to enact legislation affecting interstate commerce." *Healy v. The Beer Inst., Inc.*, 491 US. 324, 326 n.1 (1989). The Dormant Commerce Clause typically applies when a state attempts to regulate or control economic conduct wholly outside its borders with the goal of protecting in-state economic interests from out-of-state competitors. *See New Energy*, 486 U.S. at 273–74 (citing cases). "[I]n all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" *Granholm v. Heald*, 544 U.S. 460, 472 (2005) (quoting *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of Or.*, 511 U.S. 93, 99 (1994)).

Dormant Commerce Clause challenges proceed under a two-step analysis. *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578–79 (1986). In the first step, a court determines whether "a state statute directly regulates or discriminates against interstate commerce, or [whether] its effect is to favor in-state economic interests over out-of-state interests." *Id.* at 579. When a plaintiff shows a state statute discriminates against out-of-state interests on its face, in its purpose or in its practical effect, then the statute is generally invalid per se and subject to strict scrutiny. *Id.* If a plaintiff satisfies this burden, then the discriminatory law may survive only if the state can demonstrate the law "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *New Energy*, 486 U.S. at 278. At the second step, if the challenged state statute applies "even-handedly" to in-state and out-of-state interests and only incidentally burdens interstate commerce, then a court applies the Supreme Court's balancing test set forth in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). *See Brown-Forman*, 476 U.S. at 579. Under *Pike*, a court should uphold the challenged state statute unless the burden imposed on interstate commerce is "clearly excessive in relation to the putative local benefits." 397 U.S. at 142 (citing *Huron Portland*

8

*Cement Co. v. City of Detroit*, 362 U.S. 440, 443 (1960)). "The burden remains on the party challenging the statute to establish that the burden on interstate commerce is clearly excessive in relation to the putative local benefits." *Black Star Farms, LLC v. Oliver*, 544 F. Supp. 2d 913, 920 (9th Cir. 2008) (citing *Kleenwell Biohazard Waste v. Nelson*, 48 F.3d 391, 399 (9th Cir. 1995)).

1. <u>Whether Section 23661 and Related Statutes Are Discriminatory</u>

Plaintiffs assert certain provisions of California's ABC Act regulating the importation of wine discriminate against out-of-state interests. *See* Opp'n at 4–6. Specifically, plaintiffs allege that under California Business & Professions Code sections 23374, 23378, 23661 and 23775, an in-state importer can legally import wine under its importer license, transfer it to itself under its wholesaler license and distribute it to retailers, but out-of-state importers may not. SAC ¶¶ 7–10; Opp'n at 5–6. Plaintiffs further allege out-of-state importers cannot obtain this combination of licenses and must instead sell their wine to an in-state importer or wholesaler and let the in-state entity distribute it to retailers. SAC ¶¶ 8–11; Opp'n at 5–6. Defendant disagrees with plaintiffs' characterization of the law, asserting California law requires all importers to deliver wine to a physical premises in the state; any entity lacking its own licensed wholesale business premises in California, including non-resident importers, may distribute directly to California retailers if it leases space in a licensed public warehouse. Reply at 5–6.

On their face, none of the challenged provisions mandates "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste Sys.*, 511 U.S. at 99. The four statutes cited in plaintiffs' Second Amended Complaint do not distinguish between in-state and out-of-state entities, let alone prescribe unequal treatment based on geographic location. *See* Cal. Bus. & Prof. Code §§ 23374, 23378, 23661, 23775. Section 23661, in particular, requires that all alcohol imported into California be consigned for delivery at either the importer's premises or a licensed public warehouse; because these premises are places for delivery of alcohol imported into California, they necessarily must be located in California. Under California Business & Professions Code section 24041, Orion or any other "out-of-state business" may apply for and obtain either or both an importer's and/or wholesaler's

"license" in California to have alcohol come to rest, be stored, and be shipped from a licensed public warehouse. Therefore, the law, by its terms, applies equally to in-state and out-of-state importers because the statutes at issue require all importers to have a physical premises in California at which to receive delivery of imported alcohol. Accordingly, plaintiffs' challenge rests on the assertion that the statutory provisions at issue are discriminatory in effect.

Plaintiffs argue section 23661 and the related ABC Act provisions create an economic barrier that benefits in-state importers and burdens out-of-state importers because the "only way the Plaintiffs could sell the wine they have imported . . . directly to California retailers would be to open a new import/wholesale business in California with physical premises in the state." Opp'n at 6. In effect, plaintiffs argue section 23661 requires them to establish a physical presence in California to sell their wine on an equal basis with California-based importers. To support their contention, plaintiffs cite *Granholm v. Heald* for the proposition that "the high cost of opening a second facility in a distant state is relevant in assessing discriminatory effect" and "requiring an out-of-state firm to establish in-state premises in order to compete on equal terms" violates the Commerce Clause. Opp'n at 6 (citing *Granholm*, 544 U.S. at 475).

At hearing on the motion, however, it became apparent that the basis for plaintiffs' Commerce Clause claim is unclear, as the parties expressed confusion as to whether plaintiffs can obtain the licenses they seek as out-of-state importers. Both defense counsel and counsel for amici asserted plaintiffs could obtain the combination of importer's and wholesaler's licenses allowing plaintiffs to import wine, transfer it to themselves by leasing space in a public warehouse and sell it directly to California retailers on equal terms as California-based entities. Plaintiffs' counsel, in contrast, argued for the first time that plaintiffs cannot obtain this combination of licenses even if they lease public warehouse space in California. Further compounding this confusion is the fact that the threadbare allegations in the Second Amended Complaint do not focus the issue to make clear how the California law at issue here is discriminatory other than to generally allege that because plaintiff Orion "is located in Florida and has no premises in California, it is prohibited from importing, selling and delivering wine directly to California-licensed retailers." SAC ¶ 11; *see also id.* ¶¶ 8, 10 (alleging out-of-state

10

entities cannot get license allowing them to "import, sell and deliver wine directly to California-licensed retailers"). Taking into account the arguments made by plaintiffs' counsel at hearing, especially on the public warehouse option, which do not appear to be consistent with the allegations in plaintiffs' Second Amended Complaint, plaintiffs have not clearly advanced a coherent claim regarding the alleged discriminatory economic burden imposed by section 23661.

The post-hearing memoranda submitted by the parties do not clarify whether plaintiffs could obtain the licenses they seek by leasing public warehouse space. Plaintiffs provided citations to additional authority and asserted they can gain the privilege of distributing wine directly to retailers only by opening a permanent business in California, not by leasing warehouse space. Pls.' Mem. Providing Citations for New Authority Raised at the Hearing, ECF No. 44, at 2–3. Defendant responded that plaintiffs misstate the law regarding their ability to conduct business on the same basis as California-based importers. Def.'s Resp. to Pls.' Post-Hearing Mem., ECF No. 48, at 3–4.

The inconsistency between and among the pleadings, briefing and arguments in this case regarding whether and to what extent plaintiffs must establish a physical presence in California to obtain the licenses they seek precludes the court's reasoned evaluation of plaintiffs' claim, such as it is, and determination of its viability. Moreover, plaintiffs' barebones pleading exposes the absence of a full understanding of the regulatory structure and where there is a possibility of obtaining licenses after leasing public warehouse space.

For these reasons, the court GRANTS defendant's motion to dismiss plaintiffs' Commerce Clause claim, but with leave to amend if possible subject to Federal Rule of Civil Procedure 11.

        B.     <u>Privileges and Immunities Claim</u>

In their second claim, plaintiffs argue section 23661 and the related ABC Act statutes violate the Privileges and Immunities Clause of Article IV, Section 2 of the U.S. Constitution. SAC ¶¶22–32. Under that Clause, "[t]he Citizens of each State [are] entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1. The Clause protects those privileges and immunities that are "fundamental," meaning it does not

11

categorically prevent states from using state citizenship or residency as a distinguishing factor. *McBurney v. Young*, 569 U.S. 221, 226 (2013). Defendant first moves to dismiss plaintiffs' Privileges and Immunities claim under Rule 12(b)(1), arguing neither Orion nor Creighton has standing. Mot. at 6–7. Defendant also moves to dismiss under Rule 12(b)(6), asserting plaintiffs have failed to state a claim because the Second Amended Complaint does not allege an interest belonging to Creighton that is protected by the Privileges and Immunities Clause and plaintiffs have not identified any disparate treatment. Mot. at 7–8.

        1.      12(b)(1) Lack of Standing

Defendant argues both plaintiffs lack standing to bring their Privileges and Immunities claim. Mot. at 6–7; Reply at 7–8. Specifically, defendant asserts Orion has no standing under the Privileges and Immunities Clause because it is a corporation and Creighton lacks standing because his alleged prospective injuries flow directly and solely from the alleged injury to Orion. Mot. at 6–7; Reply at 7–8. Plaintiffs counter that after the Supreme Court's decision in *Citizens United v. FEC*, 558 U.S. 310 (2010), a corporation may have standing under the Privileges and Immunities Clause. Opp'n at 8. Plaintiffs also attempt to distinguish the cases cited by defendant for the proposition that Creighton lacks standing by arguing those cases involved shareholders attempting to bring personal claims based solely on an injury to the corporation when the shareholders had no other stakes in the dispute, while Creighton personally wants to do business in California independently of whether Orion may do so. Opp'n at 8–9.

Addressing first the standing of Orion, the Supreme Court has held the Privileges and Immunities Clause of Article IV does not apply to corporations. *W. & S. Life Ins. Co. v. State Bd. of Equalization of Cal.*, 451 U.S. 648, 656 (1981). Neither the Supreme Court nor the Ninth Circuit has extended the rule barring corporations from bringing a Privileges and Immunities claim to unincorporated associations, such as a limited liability company ("LLC") like Orion. Some circuit courts have elected to do so, however. *See, e.g.*, *W.C.M. Window Co., Inc. v. Bernardi*, 730 F.2d 486, 493 (7th Cir. 1984) (unincorporated association "is not a natural person" and thus "not a citizen" for purposes of Privileges and Immunities Clause); *Am. Trucking Ass'ns, Inc. v. Larson*, 683 F.2d 787, 790 (3d Cir. 1982) (declining to consider Privileges and Immunities

12

claim asserted by federation of trucking associations).  Plaintiffs cite no authority for the proposition that the bar should not also apply to an LLC.  Nothing in *Citizens United*, in which the Court confronted the issue of whether the government may suppress political speech by corporations or other associations, suggests the holding of that case extends beyond the First Amendment context.  *See Citizens United*, 558 U.S. at 319, 365.  Accordingly, the court concludes, Orion cannot raise a Privileges and Immunities claim.

Turning to Creighton's standing, at least two circuit courts have held the Privileges and Immunities Clause does not protect injuries to individual plaintiffs flowing directly and solely from the corporation's injury.  *See Chance Mgmt., Inc. v. South Dakota*, 97 F.3d 1107, 1115–16 (8th Cir. 1996); *Smith Setzer & Sons, Inc. v. S.C. Procurement Review Panel*, 20 F.3d 1311, 1317 (4th Cir. 1994).  In *Chance Management*, South Dakota denied a corporation a license to operate a video lottery machine because the corporation could not meet the requirement that South Dakota residents hold a majority ownership interest in the corporation.  97 F.3d at 1108.  The Eighth Circuit held the individual plaintiff, a Wyoming resident who did not apply individually for a license, lacked standing under the Privileges and Immunities Clause because his only injury flowed from his status as a shareholder of a corporation.  *Id.* at 1115–16.  In *Smith Setzer & Sons*, the individual plaintiff was the president and a shareholder of a corporation claiming the corporation's loss of profits injured him as well.  20 F.3d at 1316–17.  The Fourth Circuit held the individual plaintiff did not have standing to bring a claim under the Clause because his injury was merely "derivative" of the injury to the corporation.  *Id.* at 1317.

Here, plaintiff's allegations compel the same result.  The Second Amended Complaint alleges California law precluded "Plaintiffs" from entering into a contract with the "Pour House," a wine shop in Truckee, California.  SAC ¶¶ 17–20.  Plaintiffs allege no other injury specific to Creighton.  Therefore, although plaintiffs claim Creighton suffered an individual injury because he personally wants to engage in the wine distribution business in California, Opp'n at 9, the alleged injury suffered by Creighton in this case, as pled, arises directly and solely out of his status as the owner of Orion.

Plaintiffs attempt to distinguish this case by relying on *Council of Insurance Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 932 (9th Cir. 2008), to argue that individual plaintiffs do not lose their right to bring a claim under the Privileges and Immunities Clause simply because they own a business. Opp'n at 9. The individual plaintiff in *Molasky-Arman*, a California resident, insurance agent and managing director of an insurance broker who sought to do business in Nevada, alleged Nevada law precluded her from doing business on substantially equal terms as Nevada-based agents. *Molasky-Arman*, 522 F.3d at 932. The Ninth Circuit held the individual plaintiff had standing. *Id.* But unlike in this case, that plaintiff alleged a particularized injury to herself as an individual separate from any injury to the entity. *See id.* at 929, 932.

The court similarly finds plaintiffs' out-of-circuit authority unpersuasive. In *A.L. Blades & Sons, Inc. v. Yerusalim*, 121 F.3d 865, 868 n.4, 871 (3rd Cir. 1997), the Third Circuit held the individual plaintiffs, nonresident construction workers, had standing to bring a Privileges and Immunities claim challenging a Pennsylvania law that required contractors to employ only Pennsylvania residents as laborers and mechanics on Commonwealth-funded work projects. Unlike in the instant case, however, not only were the individual plaintiffs not the owners of the corporation, but their claimed injury also was not derivative of the injury to the contractor; under the law, the contractor could still receive payment for public works projects if it did not employ nonresident workers, but the individual plaintiffs could not work on these projects. *See id.* at 867–68. In *McBurney v. Cuccinelli*, 616 F.3d 393, 398, 404 (4th Cir. 2010), the Fourth Circuit held one of the individual plaintiffs challenging a Virginia law that denied nonresidents access to its Freedom of Information process had standing, even though he was the sole proprietor of the business that had contracted to supply the requested information. The court concluded the individual plaintiff's allegations that he was the sole proprietor of the business and that the law made it impossible for him to pursue his common calling stated sufficient facts to support standing. *Id.* at 404 & n.8. Even if the court were persuaded by this nonbinding precedent, however, plaintiffs have not alleged Creighton is the sole proprietor of Orion or that he suffered a direct and independent injury. *See Woods View II, LLC v. Kitsap County*, 484 F. App'x 160, 161

(9th Cir. 2012) (sole member of LLC engaged in real estate development lacked standing to bring individual § 1983 claims against County and County officials when member's financial losses were "derivative of [the LLC's] own losses" and member "was not injured directly and independently of the limited liability company").

For the reasons set forth above, the court finds both Orion and Creighton lack standing to pursue their Privileges and Immunities claim. The court GRANTS defendant's motion to dismiss plaintiffs' Privileges and Immunities claim under Rule 12(b)(1). Because neither plaintiff has standing, the court declines to reach the merits of plaintiffs' claim under Rule 12(b)(6) at this stage, although it will allow leave to amend to the extent possible.

      C.     Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides, "[t]he court should freely give leave [to amend pleadings] when justice so requires" and the Ninth Circuit has "stressed Rule 15's policy of favoring amendments," *Ascon Props. Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). "In exercising its discretion [to grant or deny leave to amend] 'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities.'" *Leighton*, 833 F.2d at 186 (quoting *Webb*, 655 F.2d at 979). However, "the liberality in granting leave to amend is subject to several limitations." *Ascon Props.*, 866 F.2d at 1160 (citing *Leighton*, 833 F.2d at 186). "Leave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Id.* (citing *Leighton*, 833 F.2d at 186). In addition, a court should look to whether the plaintiff has previously amended the complaint, as "the district court's discretion is especially broad 'where the court has already given a plaintiff one or more opportunities to amend [its] complaint.'" *Id.* at 1161 (alteration in original) (quoting *Leighton*, 833 F.2d at 186 n.3).

Plaintiffs' Second Amended Complaint contains threadbare allegations that, among other things, do not explain the claimed discrimination under California's ABC Act in a way that allows the court to accurately assess the viability of plaintiffs' claim that the law claimed

has a discriminatory effect, if any. Further, plaintiffs' allegations do not provide sufficient information about any distinct injury to Creighton as an individual to support his standing to raise a Privileges and Immunities claim. For these reasons, the court grants plaintiffs leave to amend their complaint to address these issues, if they can while complying fully with Rule 11.

IV. CONCLUSION

As explained above, the court ORDERS as follows:

1. Defendant's motion to dismiss plaintiffs' Second Amended Complaint, ECF No. 33-1, is GRANTED. The court grants plaintiffs leave to amend only as to the issues identified by the court above.

2. Plaintiffs are ordered to file any amended complaint within twenty-one (21) days of the date this order is filed.

IT IS SO ORDERED.

DATED: August 15, 2019.

_____
UNITED STATES DISTRICT JUDGE